674 So.2d 1377 (1995)
Benjamin Robert NEW
v.
STATE.
CR-94-908.
Court of Criminal Appeals of Alabama.
July 28, 1995.
Rehearing Denied November 9, 1995.
Certiorari Denied January 12, 1996.
Gary L. Blume, Tuscaloosa, for Appellant.
Jeff Sessions, Atty. Gen., and Brenda Smith, Asst. Atty. Gen., for Appellee.
Alabama Supreme Court 1950286.
TAYLOR, Presiding Judge.
The appellant, Benjamin Robert New, was convicted of unlawfully breaking and entering a vehicle, a violation of § 13A-8-11(b), Code of Alabama 1975. He was sentenced to 18 months in the penitentiary.
*1378 The state's evidence tended to show that on June 2, 1993, Lieutenant Robert Pennington of the Northport Police Department was on routine patrol at 3:30 a.m. in an unmarked vehicle. Pennington testified that while he was stopped at an intersection, a car crossed the intersection going very slowly. As it passed in front of his car, he saw that the occupants appeared to be juveniles. He testified that he decided to follow them to see where they were going. The car was moving at 15 to 20 miles per hour although the speed limit was 25 miles per hour. Pennington stated that one of the passengers in the back seat looked back at him a few times.
Pennington continued to follow the car for several blocks through a predominantly black neighborhood; the occupants of the car were white. He testified that the street they were on passed several apartment complexes where there had been numerous car burglaries in recent months. In fact, one had been reported earlier that night and the police had suspects in custody. Pennington testified that the car then headed toward the downtown business district. He became suspicious and turned on his blue lights in order to stop the car. The car pulled over and stopped in the parking lot of a bank.
Pennington testified that he walked up to the car and asked the appellant, who was driving, for his driver's license. The appellant stated that he did not have his driver's license with him. Pennington asked him to step out of the car. They walked to the back of the appellant's car, where he got the appellant's name, address, and other basic information. He asked the appellant what he was doing and the appellant said that he had been at a friend's house down the street. Pennington then talked to one of the passengers, who gave conflicting information.
Pennington decided to investigate further. He asked the appellant if he could look inside the car and the appellant consented. While searching the inside of the car he found two flashlights, a bag of tools, and a Pioneer brand car compact disc player. He stated that the tools were consistent with the tools often used in burglaries. He further stated that the flashlights had been modified with red lenses so the light from the flashlight could not be detected as easily.
Pennington talked to the appellant again and then to the two passengers individually. He testified that they again gave conflicting stories. At that time, he decided to take all of the occupants to the police station for further questioning.
The appellant contends that the trial court erred in denying his motion to suppress evidence of the tools and the compact disc player seized as a result of the stop. More specifically, he contends that the initial stop by police and the resulting seizure violated his Fourth Amendment rights under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
He contends that the stop was illegal because, he says, the police did not have a reasonable suspicion to believe that he had been involved in criminal activity, as required by Terry. In Worthy v. State, 473 So.2d 634, 636 (Ala.Cr.App.1985), this court summarized the standards set by Terry and the cases following Terry.
"In Terry, it was held that "`where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' 392 U.S. at 30, 88 S.Ct. at 1884-85.
"In order to justify the brief investigatory detention of an individual, a police officer does not have to have probable cause to arrest the person for a crime. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Spradley v. State, 414 So.2d 170, 173 (Ala.Cr.App. 1982). Although there is `no simple shorthand *1379 verbal formula which can adequately express the grounds for a Terry stop', 3 LaFave, [Search and Seizure] at § 9.3, p. 40, 1985 Pocket Part, `the essence of all that has been written is that the totality of the circumstancesthe whole picture must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)."
473 So.2d at 636-37. (Emphasis added.)
Lt. Pennington's testimony revealed that his reasons for stopping the appellant were that (1) three white youths were out at 3:30 a.m., (2) driving below the speed limit, (3) with no apparent destination, (4) in a predominantly black neighborhood, (5) in which automobile burglaries had recently occurred, (6) through a business district at a time when the businesses were closed, and also that (7) one of the passengers looked back at Pennington a few times. The appellant contends that these facts were not sufficient to provide a reasonable suspicion that he was involved in criminal activity. We agree.
This court has held that similar facts were not sufficient to supply police a reasonable suspicion that criminal activity was afoot. In Duckworth v. State, 612 So.2d 1284 (Ala.Cr. App.1992), police stopped a car containing three white males between 1:00 a.m. and 3:00 a.m. in a business district in which there had been recent burglaries. The officer who made the stop testified that he believed it "to be a little out of place" for three white males to be in that area of town at that time. Similarly, in Harris v. State, 568 So.2d 421 (Ala.Cr.App.1990), an officer testified that he was patrolling after midnight in an area in which there had been several thefts and burglaries. He observed a vehicle travelling at a slow speed through the neighborhood, and he eventually stopped the car. In both cases this court held that these factors do not provide a reasonable suspicion to stop under Terry.
In United States v. Smith, 799 F.2d 704 (11th Cir.1986), a Florida state trooper stopped a car on an interstate highway because he believed that it matched a "drug courier profile." The trooper stated that he based the stop on the following factors:
"The car was travelling 50 miles per hour. The car was occupied by two individuals who were approximately thirty years of age.
"The car displayed out of state tags. The driver appeared to be overly cautious and did not look in our direction as he proceeded past us. The car was traveling at 3:00 in the morning."
799 F.2d at 706.
In Smith, the drivers were driving late at night under the speed limit. The court stated:
"Except perhaps for the time of day, the few factors relied upon by [the state trooper] would likely apply to a considerable number of those travelling for perfectly legitimate purposes along Interstate 95."
". . . .
"That [the state trooper's] `hunch' about the appellants proved correct is perhaps a tribute to his policeman's intuition, but it is not sufficient to justify, ex post facto, a seizure that was not objectively reasonable at its inception."
Smith, 799 F.2d at 707-08.
In State v. Washington, 623 So.2d 392 (Ala.Cr.App.1993), this court cited as persuasive authority United States v. Tapia, 912 F.2d 1367 (11th Cir.1990). In Tapia, the United States Court of Appeals for the Eleventh Circuit stated:
"In United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), the Supreme Court observed that considering the totality of the circumstances in the course of evaluating the validity of a Terry stop is a process that `does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the sameand so are law enforcement officers.' The corollary to such a statement, however, is that in formulating such common-sense conclusions, neither police officers *1380 nor courts should sanction as `reasonably suspicious' a combination of factors that could plausibly describe the behavior of a large portion of the motorists engaged in travel upon our interstate highways."
912 F.2d at 1371. (Emphasis added.)
After a thorough review of the record and after considering the totality of the circumstances, we hold that at the time of the initial stop the police did not have a reasonable suspicion that the appellant was involved in criminal activity. A group of teenagers driving late at night during the summer in a high crime area while obeying the traffic laws does not give rise to a reasonable suspicion that they are engaged in criminal activity. Looking back at a car behind yours is not uncommon, especially if you are being followed late at night on an otherwise empty street. There were no reports of criminal activity in the area except for a burglary that had occurred three hours earlier. However, the fact that a burglary had been committed earlier is not particularly compelling as reasonable suspicion for stopping the appellant because the police already had suspects in custody for the burglary. Furthermore, Pennington did not testify that he was following the appellant's car because its occupants were suspects in the earlier burglary.
Therefore, we hold that the trial court erred in denying the appellant's motion to suppress. For the foregoing reasons, the judgment is reversed and the cause remanded to the Tuscaloosa Circuit Court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON and McMILLAN, JJ., concur.
LONG, J., dissents with opinion with COBB, J., joining.
LONG, Judge (dissenting).
I respectfully dissent. In my opinion, the officer's actions in approaching and stopping the appellant's vehicle were justified under the rule established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The majority notes that Lt. Pennington testified that the following factors underlay his stop of the appellant's car:
"(1) three white juveniles out at 3:30 a.m., (2) driving below the speed limit, (3) with no apparent destination, (4) in a predominately black neighborhood (5) where car burglaries had occurred recently, (6) through a business district where the businesses had closed, and (7) one of the passengers looked back at Pennington a few times."
674 So.2d at 1379.
Even after giving due consideration to the often peculiar manifestations of wholly innocent behavior, I believe that Lt. Pennington articulated a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The totality of the circumstances afforded Lt. Pennington a reasonable foundation for his suspicions, which he should not have been required to discount as merely a "hunch." I cannot believe, as the majority apparently does, that the factors that aroused Lt. Pennington's suspicions, taken in combination, would, in fact, apply to "`a large portion of the motorists engaged in travel upon our interstate highways.'" 674 So.2d at 1380 (quoting United States v. Tapia, 912 F.2d 1367, 1371 (11th Cir.1990)). Moreover, as other courts have observed, "`[i]t must be rare indeed that an officer observes behavior consistent only with guilt and incapable of innocent interpretation.'" United States v. Rickus, 737 F.2d 360, 365 (3rd Cir.1984) (quoting United States v. Price, 599 F.2d 494, 502 (2d Cir.1979)); accord United States v. Wallraff, 705 F.2d 980, 988 (8th Cir.1983); United States v. Black, 675 F.2d 129, 137 (7th Cir. 1982), cert. denied, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983); United States v. Viegas, 639 F.2d 42, 45 (1st Cir.), cert. denied, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). "`[I]t is important to recall that a trained law enforcement agent may be "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." (quoting Brown v. Texas, 443 U.S. [47,] 52 n. 2, 99 S.Ct. [2637,] 2641 n. 2 [, 61 L.Ed.2d 357 *1381 (1979)].'" Pianzio v. State, 423 So.2d 258, 266 (Ala.Cr.App.1981) (DeCarlo, J., dissenting), quoting United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980).