COBB, Judge,
dissenting.
I agree with the majority’s recitation of the legal standards applicable in this case. However, I disagree with the majority’s interpretation of the standards and with the majority’s application of the law to the facts presented. I believe that the trial court erred when it denied Nieto’s motion to suppress, and I would reverse the judgment in this cause.
A review of the totality of the circumstances is required to determine whether Agent Weinbrenner had a “particularized and objective basis” for suspecting criminal activity. Appellate review in a case such as this one should be de novo. United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The facts in Arvizu were that the appellant was in an area on the United States-Mexico border, “driving on an unpaved road in a remote area of southeastern Arizona.” Id. at 268, 122 S.Ct. at 747-48. The road was described as “very rarely traveled except for use by local ranchers and forest service personnel.” Id. at 269, 122 S.Ct. at 748. Smugglers “commonly” attempted to avoid a border-patrol checkpoint by traveling on the road, and agents knew that smugglers sometimes drove minivans. A magnetic sensor indicating passage of a vehicle on the road was triggered one afternoon, when border-patrol agents were preparing for a shift change and when the area would be unpatrolled. The agent who responded to the sensor had been told that the same sensor had gone off several weeks earlier and that the agent on duty “had apprehended a minivan using the same route and witnessed the occupants throwing bundles of marijuana out the door.” Id. at 270, 122 S.Ct. at 749. When the agent responded to the scene where the sensor had been triggered, he observed a minivan with two adults and three children. The minivan slowed from 50-55 miles per hour to 25-30 miles per hour as it approached the agent’s vehicle. The agent stated that the driver appeared stiff, and he did not look at the agent. He also observed that the knees of the children sitting in the backseat were “unusually high, as if their feet were propped up on some cargo on the floor.” Id. at 270, 122 S.Ct. at 749. The children, although facing forward, put their hands up at the same time and waved in an abnormal pattern for four to five minutes, as if they had been instructed to do so. The minivan abruptly turned onto a road that is normally traveled only by four-wheel-drive vehicles. The agent did not recognize this minivan as one of the local vehicles that agents encountered on patrol, and he knew it was unlikely that the minivan’s occupants were on a picnic outing, because no picnic grounds were accessible by that road. When the agent radioed for a registration check on the vehicle, he learned that it was registered to an address four blocks from the border, “in an area notorious for alien and narcotics smuggling.” Id. at 271, 122 S.Ct. at 749. The agent stopped the vehicle and, after the appellant gave his consent, searched the vehicle. A duffle bag under the feet of the children in the backseat contained marijuana, and another bag of marijuana was found behind the seat. Id. at 272, 122 S.Ct. at 750.
*100 The Supreme Court upheld the denial of the appellant’s motion to suppress based on its review of the totality of the circumstances. The Court stated:
“[W]e hold that [Agent] Stoddard had reasonable suspicion to believe that respondent was engaged in illegal activity. It was reasonable for Stoddard to infer from his observations, his registration check, and his experience as a border patrol agent that respondent had set out from Douglas along a little-traveled route used by smugglers to avoid the 191 checkpoint. Stoddard’s knowledge further supported a commonsense inference that respondent intended to pass through the area at a time when officers would be leaving their backroads patrols to change shifts. The likelihood that respondent and his family were on a picnic outing was diminished by the fact that the minivan had turned away from the known recreational areas accessible to the east on Rucker Canyon Road. Corroborating this inference was the fact that recreational areas farther to the north would have been easier to reach by taking 191, as opposed to the 40-to-50-mile trip on unpaved and primitive roads. The children’s elevated knees suggested the existence of concealed cargo in the passenger compartment. Finally, for the reasons we have given, Stoddard’s assessment of respondent’s reactions upon seeing him and the children’s mechanical-like waving, which continued for a full four to five minutes, were entitled to some weight.”
United States v. Arvizu, 534 U.S. at 277, 122 S.Ct. at 752-53.
The facts in this case are more dissimilar from those in Arvizu than the majority has acknowledged in its opinion. Nieto was driving an older vehicle on an interstate highway near Birmingham, Alabama, hundreds of miles from the border between the United States and Mexico, which at once distinguishes this case from Arvizu. In this situation, the fact that the vehicle had Texas state tags was of little consequence. Agent Weinbrenner testified that the driver appeared to be of Hispanic descent, that the vehicle had heavily tinted windows, and that it had a Texas license plate. Nieto was not violating any criminal laws when he was stopped by the agent. Rather, the agent testified that all of the vehicle stops he made were “based on immigration purposes.” (R. 14.) Weinbrenner said he knew that Texas has “major source cities for smuggled aliens,” and that he had personal knowledge that Interstate 20 “is an extremely popular route for smugglers of illegal aliens.” (R. 8.) To find that these circumstances created a reasonable suspicion sufficient to justify a stop of this appellant, the agent and a majority of this Court are painting with far too broad of a brush. In Arvizu, the evidence indicated that the minivan was registered to a town four blocks from, the border “in an area notorious for alien and narcotics smuggling.” 534 U.S. at 271, 122 S.Ct. at 749. I find it unreasonable to attribute any suspicions to every vehicle registered in the state of Texas and traveling along a major interstate highway in Alabama. Moreover, the majority noted that the driver was weaving within the right-hand lane of traffic, which the agent attributed to the driver’s nervousness at being pursued by a border-patrol agent.[1] I cannot agree that weaving within the right-hand lane of traffic, even when that factor is combined with others, supports a finding of reasonable suspicion of criminal *101 activity. That the driver appeared stiff and rigid is likewise of little significance, because nervousness in the presence of a law-enforcement officer “and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity.” State v. Washington, 623 So.2d 392, 398 (Ala.Crim.App.1993). As the United States Supreme Court stated in Arvizu:
“We think it quite reasonable that a driver’s slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona).
534 U.S. at 275-76, 122 S.Ct. at 752 (emphasis added).
I also do not find that a child in the backseat of a vehicle “ducking down” warrants suspicion that criminal activity is afoot. While I am aware that heavily tinted windows, particularly on an older model vehicle, might suggest that the driver wishes to conceal the interior, I am also aware that some vehicle owners, particularly those who live in states with warm climates, like Texas, tint their windows to deflect the sun’s rays.
Even when the allegedly suspicious factors are considered in their totality, as an appellate court is required to do, I cannot agree that Agent Weinbrenner had reasonable suspicion for suspecting that Nieto was engaged in criminal activity. I find the following analysis, which this Court quoted in an earlier case, highly relevant to this case:
“ ‘Nevertheless, we find that the factors cited by the district court in this case, e.g., being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama), do not provide a minimal, particularized basis for a conclusion of reasonable suspicion on the part of Officer Guthrie. Even when considered together and in light of all the facts, such observations fail to suggest that the [occupants of the vehicle] were engaged in any criminal activity other than speeding on the highway. Neither, for that matter, do any of the other allegedly “suspicious” facts urged by the government, such as [the driver’s] looking away quickly as he passed the officer on the highway, the [defendants’] possessing valid San Antonio driver’s licenses, or the bare fact of the car being insured by a third party.’ ”
“[United States v. Tapia,] 912 F.2d [1367,] at 1370-71 [(11th Cir.1990)].”
State v. Washington, 623 So.2d 392, 397 (Ala.Crim.App.1993). Significantly, in United States v. Tapia, 912 F.2d 1367 (11th Cir.1990), and in Washington, law-enforcement officers stopped the defendants’ vehicles for speeding, and the reviewing courts held that the subsequent detentions were not supported by reasonable suspicion. In State v. Washington, we further stated:
“We also decline to accept the State’s suggestion that we consider the defendant to have been detained in a high crime area. Trooper Eller’s statement that ‘people haul[] drugs up and down the interstate’ is far from ‘evidence’ that the interstate is ‘an area ... known for crime.’ State’s brief at 18. As the Utah Supreme Court has observed, ‘[although the density of the traffic ... varies, travelers use the interstate highway[s] at all times of the day and night and at all times of the year.’ State v. *102 Mendoza, 748 P.2d 181, 183-84 (Utah 1987). Tt seems unlikely that [drug traffickers] comprise [such] a significant portion of interstate traffic’ that we may categorize the interstates as high crime areas. Id. at 183.”
623 So.2d at 397.
None of the factors relied on by the majority are inherently suspicious, and all of the factors considered together do not establish reasonable suspicion. The factors amount to no more than a hunch, and a mere hunch is insufficient to justify a stop. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “Having considered the totality of the circumstances and given due weight to the factual inferences drawn by the law enforcement officer,” Arvizu, 534 U.S. at 277, 122 S.Ct. at 752, I cannot agree that the agent’s decision to stop the appellant’s vehicle was based on reasonable suspicion. Nor do I believe that the facts presented in this case are as similar to those in Arvizu, as the majority appears to suggest. For all of the foregoing reasons, I believe that the trial court erred when it denied the motion to suppress. Accordingly, I dissent.

. The agent testified that the driver's weaving within the right-hand lane seemed to indicate either that the driver was nervous upon seeing the officer "and/or that the vehicle was in a state of disrepair.” (R. 6.)