[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14075
Non-Argument Calendar

_____

D. C. Docket No. 05-00580-CR-SLB-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUSHON ANTOINE WILLIAMS,
a.k.a. Dontae Hatchell,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 30, 2007)

Before ANDERSON, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Lushon Antoine Williams, who was convicted for possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), appeals the district court's denial of his motion to suppress the marijuana seized from his tractor trailer after a search by a police dog during a traffic stop. Williams concedes that the police officer who detained him on the highway had probable cause to stop him initially for a traffic violation. Williams argues, however, that the police officer lacked reasonable suspicion to detain him for further questioning beyond that related to the traffic violation and that the detention matured into an unlawful custodial arrest.

The police officer testified at the hearing on Williams's motion that through a series of questions he noted, among other things, that Williams did not behave as truckers normally do when pulled over, did not have valid registration papers for his tractor trailer, had a 24-hour or more layover in an area known as a drug corridor, and behaved oddly when answering whether he was transporting illegal people or substances. Based on these factors, the police officer became suspicious that Williams may not have had authority to drive the tractor trailer or may be transporting something illegal, such that he summoned a police dog. After the police dog alerted near the cab of the tractor trailer, the police officer found approximately 200 pounds of marijuana in the sleeper berth of the cab. The

2

testimony at this hearing also revealed that the entire detention lasted approximately 37 minutes, 13 minutes of which was spent waiting for the police officer's partner to transport the police dog to the site of the stop.

In reviewing the district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and application of law to those facts *de novo*. *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004). The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809-810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). The Supreme Court has held that even a brief and limited detention by the police of an individual in his car constitutes a "seizure" within the meaning of the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* Therefore, a traffic stop must be reasonable. The Supreme Court has explained that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810.

Even in the absence of probable cause, however, a traffic stop may be reasonable if the police officer has a "reasonable suspicion" that the person in question is or was involved in criminal activity, pursuant to the principles set forth

3

in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). When a police officer has such a reasonable suspicion, he is justified in lengthening a traffic stop for further questioning beyond that related to the initial stop. *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). Pursuant to the principles set forth in *Terry*, whether a police officer had a reasonable suspicion is determined based on the totality of the circumstances. *Tapia*, 912 F.2d at 1370. Also, while the police officer's level of suspicion need not be supported by proof of wrongdoing by a preponderance of the evidence or a fair probability that evidence of a crime will be found, it must be "more than an inchoate hunch." *Id.* (quotation omitted). Accordingly, the police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts," warrant the intrusion. *Id.* (quotation and citation omitted).

Although a reasonable suspicion that criminal activity is afoot can justify a prolonged traffic stop, the Supreme Court has held that a reasonable seizure can mature into an unreasonable arrest where its scope is not "strictly tied to and justified by the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 18-19, 88 S. Ct. at 1878 (quotation omitted). To determine whether a stop became an arrest, we apply four non-exclusive factors: (1) the law

4

enforcement purposes served by the detention, (2) the diligence with which the police pursued the investigation, (3) the scope and intrusiveness of the detention, and (4) the duration of the detention. *Acosta*, 363 F.3d at 1145-46.

In analyzing the first factor, the purposes served by the detention, "the most important consideration is whether the police detained the defendant to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." *Id.* at 1146 (quotation and citation omitted). Under the second factor, the police's diligence, we ask whether the methods the police officer used were carried out without unnecessary delay. *Id.* We have held that the police acted diligently where "[e]ach investigatory act [by the police] logically led to the next act which was done without delay." *Id.* Regarding the third factor, the scope and intrusiveness of the detention, we have held a stop is not necessarily transformed into an arrest because an officer draws his weapon, handcuffs a suspect, orders a suspect to lie face down on the ground, or secures a suspect in the back of a patrol car. *Id.* at 1147. Finally, with respect to the fourth factor, the duration of the stop, "[t]here is no rigid time limitation or bright line rule regarding the permissible duration of a *Terry* stop." *Id.* In *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988), we expressed some "unease" at a traffic stop lasting 50 minutes, but found that that length alone was insufficient

to invalidate the stop.  Morever, in *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000), we held that a 75-minute stop was reasonable.

The totality of the circumstances in the present case suggests that the police officer had a reasonable suspicion that Williams was engaged in criminal activity, such that he was justified in lengthening the traffic stop to ask Williams questions beyond those having to do with the traffic violation.  *See Pruitt*, 174 F.3d at 1220; *Tapia*, 912 F.2d at 1370.  At the suppression hearing, the police officer was able to point to specific and articulable factors which, taken together with his rational inferences, formed his reasonable suspicion.  *See Tapia*, 912 F.2d at 1370.

Likewise, the evidence suggests that the stop did not mature into a custodial arrest.  *See Terry*, 392 U.S. at 18-19, 88 S. Ct. at 1878.  The detention was justified by legitimate purposes, in that the police officer immediately became suspicious when Williams did not behave as truckers normally do when pulled over, and the officer attempted to confirm or dispel his suspicion quickly.  *See Acosta*, 363 F.2d at 1146-47.  Likewise, the police officer conducted each step in his investigation without unnecessary delay, as each of his questions "logically led to the next act which was done without delay."  Also, the police officer did nothing save ask Williams questions.  *Id.*  Finally, the police officer's detention of Williams was of a shorter length than those  previously approved by us and the length of the stop

was justified by the need to transport the dog to the site of Williams's tractor trailer on the highway. *See Hardy*, 855 F.2d at 761; *Gil*, 204 F.3d at 1350.

Accordingly, because the police officer had a reasonable suspicion to prolong the initial stop and because the stop did not rise to the level of an arrest, we conclude that the district court did not err in denying the motion to suppress. Thus, we affirm the district court's order denying Williams's motion to suppress and Williams's conviction.

**AFFIRMED.**