[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 28, 2003
THOMAS K. KAHN
CLERK

No. 02-15183

_____

D. C. Docket No. 02-00053-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JODY JAMES BOYCE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(November 28, 2003)**

Before ANDERSON and BIRCH, Circuit Judges, and PROPST[*], District Judge.

---

[*]Honorable Robert B. Propst, United States District Judge for the Northern District of Alabama, sitting by designation.

BIRCH, Circuit Judge:

Defendant-appellant, Jody Boyce, pled guilty to possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) after the district court refused to suppress evidence obtained by police from a warrantless investigatory traffic stop and search of Boyce's vehicle. Boyce challenges his conviction by contending that the search of his vehicle violated the Fourth Amendment because the police detained him longer than necessary to process the original traffic violation without a reasonable, articulable suspicion to justify prolonging the detention. Boyce further argues that the detention and search are unconstitutional because "[t]he decision to detain the vehicle was based on Mr. Boyce's refusal to consent to a search of his car." Apellant's Br. at 12. We agree that no sufficient factual basis existed to justify the police in prolonging the detention beyond the time necessary to process the original traffic violation. Accordingly, we REVERSE the judgment of the District Court.

## I. BACKGROUND

At 11:23 P.M. on 2 November 2001, Deputy David Edwards of the Sheriff's Department for Liberty County, Georgia was patrolling Interstate 95 when he observed a Dodge Malibu driving ten miles per hour under the speed limit and weaving on the highway. Thinking that the driver might be under the influence of

2

drugs or alcohol, Edwards stopped the vehicle and asked the driver, Jody Boyce, to exit to the rear of the vehicle. Once Edwards had stopped Boyce's vehicle, a video camera in the patrol car began recording the remainder of the traffic stop.[1]

Boyce exited the vehicle and gave Edwards his driver's license and rental car agreement. Boyce explained to Edwards that he had been pulled over a little while earlier for the same offense and that he was tired because had been driving since 10:00 A.M. Admitting that he was too tired to drive, Boyce then said that he would look for a place to sleep for the night. At this point, Edwards asked Boyce about his travel plans. Boyce responded that he was travelling from New Jersey to Fort Lauderdale, Florida to see his "girlfriend/ex-girlfriend." Ex. 1 at 00:41:32-34. Edwards asked, "Which is it?" and Boyce indicated that he was not sure what the current status of the relationship was because "she moved to Florida." Id. Edwards asked about the length of Boyce's trip and Boyce said that he was planning to return the following Wednesday, two days after the rental agreement indicated the vehicle was to be returned.

Edwards later testified that this conversation made him suspicious that

---

[1] The videotape of the traffic stop is time stamped, but, unfortunately, the time noted on the tape is incorrect. R2-10. Therefore, we will generally refer to the tape only to show sequences of events and the amount of time passing between events rather than referring to the specific time noted on the tape. When we must cite to the tape, we will list the time as stamped on the tape.

Boyce was being "deceitful." R2 at 19. Specifically, Edwards testified that he became suspicious because he felt it was unusual to drive such a long distance to see an ex-girlfriend. Id. at 13. Edwards was also suspcious because of the discrepency between Boyce's travel plans and his rental agreement, and because Boyce seemed extremely nervous. Id. at 21 Edwards testified that Boyce seemed nervous because Edwards had "never seen anyone sweat as much as he was," Id. at 25, and because he was overly talkative. Id. at 16. It seemed unusual to Edwards that Boyce would be so forthcoming about where he had been and what he had been doing. Id. In addition, Edwards found it suspicous that Boyce told him a few times during their conversation that his license was good. Id. at 17. Edwards also testified, however, that Boyce's behavior was not unique and that he has pulled over other drivers who try to explain their actions. Id. at 42-43.

At the end of this conversation, Edwards told Boyce that he was not planning on giving him a ticket and told him to go back to his car while Edwards looked for his warning citation book. Id. at 14-15. Seven minutes later, Edwards exited his patrol car and asked Boyce to come around to the back of his vehicle again. Ex. 1 at 00:42:38-00:49:38. By this time, Edwards had received a clean license check on Boyce and had written a warning citation. R2 at 48. Edwards returned Boyce's driver's license and rental agreement but did not give him the

4

citation. Id. at 49. Edward's then told Boyce that he was going to give him a "courtesy warning" and asked Boyce if there were any drugs or weapons in his car. Ex. 1 at 00:49:54-00:50:23. Boyce responded that there were none and Edwards asked Boyce if he could search the car. Id.; R2 at 17-18. Boyce refused to consent to the search and Edwards immediately returned to his vehicle and called for a drug dog unit. Ex. 1 at 00:50:23-29. Edwards then told Boyce that he had called a drug dog unit and asked Boyce to wait for the unit to arrive. Edwards waited behind his car where he was still visible to the video camera.

Edwards testified that, at this point, he was becoming more suspicious of Boyce because Boyce had continued to act nervously even after being told that he would not be receiving a traffic ticket. In addition, Edwards testified that Boyce was moving back and forth and looking around, as if to flee, while they were waiting for the drug dogs. R2 at16.

Approximately six minutes after calling the drug dogs, Edwards radioed in a request for a criminal history of Boyce. Ex. 1 at 00:56:07 (Edwards asks for a "c.h."). This report had not come back another six minutes later when the drug dogs arrived and alerted on Boyce's trunk. Once the dog alerted, the police searched Boyce's car and found two large containers of marijuana and a small box containing over 10,000 ecstasy pills.

5

Boyce moved to suppress evidence of the drugs obtained during the warrantless search of his vehicle arguing that his detention, beyond the point where Edwards had written the warning citation, violated the Fourth Amendment of the United States Constitution. The magistrate judge recommended denial of Boyce's motion. The district court adopted the magistrate judge's report and denied Boyce's motion to suppress. Boyce then pled guilty of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), reserving his right to appeal the district court's determination that his detention and search were lawful.

## II. DISCUSSION

Boyce appeals the district court's decision to deny his motion to supress the evidence discovered during the search of his car. "We review the district court's denial of a motion to suppress evidence as a mixed question of law and fact. 'The district court's findings of fact are viewed under the clearly erroneous standard; its application of the law to those facts is subject to <u>de novo</u> review.'" <u>United States v. Gordon</u>, 231 F.3d 750, 753-54 (11th Cir. 2000) (citation omitted). We also construe all facts in the light most favorable to the prevailing party in the district court–here, the government. <u>United States v. Magluta</u>, 44 F.3d 1530, 1536 (11th Cir. 1995).

6

Boyce argues generally that Edwards exceeded both the duration and the scope of a constitutional traffic stop.[2]  Under Terry v. Ohio, an officer's investigation of a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place."  392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1984).  In addition, the traffic stop must be of a limited duration.  The stop "may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity."  United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (citation omitted).

Primarily, Boyce argues that the basis for detaining him while waiting for a drug dog unit was his refusal to allow Edwards to search his car.  If this is the case, any resulting search would be a violation of the Fourth Amendment.  United States v. Williams, 271 F.3d 1262, 1271 (10th Cir. 2001); United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997).  Alternatively, Boyce contends that the initial traffic stop investigation ended once Edwards had completed the warning citation and returned Boyce's license and rental agreement.  At that point, Boyce argues, he should have been free to leave and his continued detention to await a drug dog unit was unconstitutional, unless Edwards had a reasonable suspicion of criminal

---

[2]Boyce does not argue that Edwards lacked probable cause to make the original traffic stop based on Boyce's failure to maintain the same lane.

7

wrong-doing on Boyce's part. Boyce argues that Edwards did not have the necessary reasonable suspicion because the factors on which the district court relied to find reasonable suspicion were nothing but "inchoate suspicions and unparticularized hunches." Appellant's Br. at 11. Thus, Boyce argues, Edwards should not have been allowed to detain him and the search resulting from this detention violated the Fourth Amendment.

The government argues that Edwards did not take longer than necessary to process the traffic stop because Edwards had not yet received the results of the criminal history check he had requested. Such a check, in its view, is a continuation of the original traffic stop such that Edwards could detain Boyce while awaiting the results. Therefore, the government argues, Edwards was being lawfully detained when the drug dogs arrived and, once the dogs alerted on Boyce's trunk, the police had probable cause to conduct a search. In the alternative, the government argues that Edwards had a reasonable suspicion of criminal activity on Boyce's part such that it was constitutional to detain him until the drug dog unit arrived.

A. Duration of the Traffic Stop

An officer may only prolong a traffic stop in special circumstances. First, police officers conducting a traffic stop may "prolong the detention to investigate

8

the driver's license and the vehicle registration, and may do so by requesting a computer check." Purcell, 236 F.3d at 1278. Similarly, out of interest for the officer's safety, we have found that officers may permissibly prolong a detention while waiting for the results of a criminal history check that is part of the officer's routine traffic investigation. Id. at 1278. In addition, an officer may prolong a traffic stop if he has "articulable suspicion of other illegal activity."[3] Id. at 1277. This case, however, does not present any of these situations.

1. Criminal History Check

The government argues that our opinion in Purcell stands for the proposition that an officer may generally detain a driver to await the results of a criminal history check so long as the detention does not last an unreasonably long time. The circumstances in Purcell, however, are distinguishable from those in this case in a crucial way. In Purcell, we held that the officer could permissibly detain the defendant pending a criminal history check because the officer had made the request for a criminal history check as part of his "routine computer check." Id. at 1278. That check was clearly part of the original traffic stop investigation. Here, Edwards did not request a criminal history check as part of

---

[3]An officer may also prolong a detention with the consent of the detainee, United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990) but neither Boyce nor the government argue that Boyce consented to the detention at issue.

9

his routine computer check. Edwards only requested a license check when he initially stopped Boyce and had received that information when he told Boyce that he would only get a warning citation. Once Edwards had completed writing the warning citation and returned Boyce's license and rental agreement, the traffic violation investigation was complete and, as Edwards admits in his testimony, Boyce was free to go. R2 at 57.

Edwards did not request the criminal history check until several minutes after he had written the warning. Therefore, the criminal history check could not be part of the original traffic stop investigation and could not be the basis for prolonging Boyce's detention. Once the traffic stop was at an end, Edwards should have let Boyce go unless he had a reasonable and articulable suspicion of some other criminal wrong doing.[4]

2. Reasonable Suspicion

The government also argues that Edwards had a reasonable and articulable

---

[4]The district court also found that Edwards had requested a vehicle history report that did not arrive until, approximately, two minutes before the drug dogs arrived. While waiting for this report may have, in other circumstances, allowed Edwards to detain Boyce, Purcell, 236 F.3d at 1279 (three minute detention after requested information arrived was deminimis and not an unconstitional detention), it does not permit prolonging the detention in this case. This check, like the criminal history check, did not appear to be part of Edwards's routine. Edwards never testified that he was waiting for a vehicle history report and the only evidence in the record suggesting that Edwards requested such a report is the videotape which also indicates that Edwards made the request after his initial investigation had ended. Moreover, the government does not argue on appeal that Edward's was waiting for a vehical history.

suspicion sufficient to detain Boyce beyond the initial traffic stop. In United States v. Tapia, we stated that reasonable suspicion requires that the officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 912 F.2d 1367, 1370 (11th Cir. 1990) (citation omitted). Further, we stated that reasonable suspicion is determined by the "totality of the circumstances" such that, while some individual factors may be "consistent with innocent travel . . . [they can also], when taken together, give rise to a reasonable suspicion." Id. "Nevertheless, 'reasonable suspicion must be more than an inchoate 'hunch,' and the [F]ourth [A]mendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop." Id.

In this case, the district court found that Edwards articulated enough factors that, when taken together, gave rise to a reasonable suspicion that Boyce was engaged in criminal activity. Specifically, the district court adopted the magistrate judge's report which listed the following factors as creating a sufficient basis for reasonable and articulable suspicion:

> that drug dealers use the Interstate 95 corridor and frequently drive rented cars [as Boyce was doing]. . . .[,] that [Boyce] was unusually talkative and nervous, that his story about driving from New Jersey to Florida to see an ex-girlfriend seemed suspicious, that his rental agreement was inconsistent with his stated travel plans, and that he

11

was sweating profusely . . . [and] he continued to sweat and act nervously after learning that he would only receive a warning citation.[5]

R1-19 at 6-7, *adopted by District Court at* R1-28.

While these combined factors may raise a reasonable suspicion in another case, the record here does not substantiate the district court's findings that all of these factors existed in this case. Moreover, when we look at the factors that do clearly exist in this case, they do not amount to a reasonable suspicion of criminal activity.

Edwards and the district court relied heavily on Boyce's nervousness and the behaviors that conveyed this nervousness such as sweating, being unusually talkative, and moving back and forth "as if looking for a place to run." R2 at 18. We find that the district court clearly erred in finding Boyce was "unusually nervous because the videotape belies Edwards's testimony as to these behaviors. For example, Edwards testified that he had never seen anyone sweat so much in

---

[5] During oral argument, there was mention of another possibly suspicious circumstance. Specifically, it was suggested that it may have been suspicious for Boyce to ask Edwards if there were any hotels in the area even though he had just passed an exit with lodging. First, we note that neither the district court nor the government relies on or even cites this as one of the factors to consider. But, even if they had relied on it, this was not a suspicious circumstance in this case because Boyce never indicated that he had been looking for lodging before Edwards stopped him. The tape suggests that Boyce was choosing to stop for the night only because he had been pulled over for the second time. Because he had not been looking for a hotel prior to the stop, it is not suspicious that he did not pull over at the earlier exit.

12

his life as Boyce. Id. at 25. But, if someone were sweating so profusely, one would expect to see him wipe his brow more than once in the span of twenty minutes. The tape does not show Boyce wiping his brow, even once, until the stop had been on-going for twenty minutes. Further, Boyce's shirt never appeared to be sticking to him and it did not appear to have any sweat stains.

Similarly, the tape does not show Boyce to be particularly talkative. Boyce did try to explain his driving behavior at the beginning of the stop and said, a few times, that his license is good, but through most of the tape he is merely answering Edwards's questions. In fact, after their initial conversation, before Edwards went to his vehicle to find his citation book, Boyce hardly said a word, speaking *only* to answer Edward's questions.

In addition, even though Edwards testified that Boyce was moving back and forth as if "looking for a place to run" while they were waiting for the drug dog unit to arrive, most of the time Boyce was, in fact, standing still. When Boyce did move, he shifted his weight back and forth without actually moving from the spot where Edwards asked him to wait. Further, this alleged pacing occurred after Edwards had unlawfully decided to detain Boyce.

The district court also relied on Edwards's testimony that Boyce continued to act nervously even after Edwards told him he would receive just a warning

13

instead of a ticket. Again, we find that the tape belies Edwards's testimony. As we have already noted, the tape shows that Boyce was not acting nervously even before he was told he would only receive a warning. In addition, the tape shows that Edwards did not have time to observe any continued nervousness before he called the drug dog unit because less than forty seconds elapsed between the time Edwards told Boyce he would not get a ticket and the time Edwards returned to his car to call for the dogs. Ex. 1 at 00:49:54-00:50:29.

Besides the nervousness, the district court also relied on Edward's testimony that he was suspicious because Boyce was traveling such a long distance to see an ex-girlfriend. The problem with using this factor as a basis for reasonable suspicion is that Boyce explained to Edwards why he was making the trip. Boyce was not sure of the current status of the relationship because his girlfriend had moved to Florida while he lived in New Jersey. Id. at 01:41:30-39. Once Boyce explained his situation, "suspicious inconsistencies virtually evaporated and any justification . . . for further investigation [based on this inconsistency] dissipated." Wood, 106 F.3d at 947. Further, even if Boyce had not explained himself, his travel plans, though unusual in Edwards's opinion, do not suggest any criminal activity.

This leaves as the only factors creating a reasonable suspicion: 1) driving a

14

rental car on a known drug corridor and 2) planning to return the car two days late. The more suspicious of these factors is the plan to return the car late. We, and other courts, have, in certain circumstances, found that inconsistencies in travel plans can give rise to a reasonable suspicion. See e.g., Williams, 271 F.3d at 1270; United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999); Wood, 106 F.3d at 947; United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991). In all of those cases, however, the inconsistency was one of several factors considered and was more directly indicative of some sort of criminal activity.

For example, conflicting answers about where one is traveling to or from may give rise to a suspicion of drug activity because most drivers know the answers to these questions and because the driver may be trying to hide the fact that he is going to or from a known drug-source state. Williams, 173 F.3d at 1270; Wood, 106 F.3d at 947. Similarly, it raises a reasonable suspicion that the car is stolen if the rental agreement shows that the person detained is not authorized to drive the vehicle. Pruitt, 174 F.3d at 1220. In this case, the fact that Boyce was planning to return his car late does not suggest any criminal activity.

The plan to return the car late, combined with the fact that Boyce was driving a rental car on a widely used interstate that also happens to be a known drug corridor, does not create a reasonable suspicion in this case. These factors

15

"would likely apply to a considerable number of those traveling for perfectly legitimate purposes" and "do[] not reasonably provide . . . suspicion of criminal activity." United States v. Smith, 799 F.3d 704, 707 (11th Cir. 1986). See also, Reid v. Georgia, 448 U.S. 438, 441, 100 S. Ct. 2752, 2754 (finding that arriving early in the morning, when law enforcement activity is lower, from a known drug-source state with no luggage other than shoulder bags was not sufficient for reasonable suspicion because those factors "describe a very large category of presumably innocent travlers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in [that] case could justify a seizure"); Karnes v. Skrutski, 62 F.3d 485, 493 (3rd Cir. 1995) ("[T]he factors together must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied."). Because the totality of the circumstances are not sufficient to create a reasonable suspicion that Boyce was involved in criminal activity, Edwards could not lawfully hold him beyond the time of the initial investigation. Therefore, the resulting search was unconstitutional.[6]

---

[6]To conclude that these factors added up to reasonable suspicion, the magistrate judge and district court relied on United States v. Harris, in which we found there was reasonable suspicion because the defendant was 1) driving a rental car with a restricted license, 2) was shaking and acting extremely nervous, and 3) gave conflicting responses regarding his travel plans. 928 U.S. 1116-17 (11th Cir. 1991). The factors creating reasonable suspicion in Harris, however, are distinguishable from the factors cited in this case. First, in this case, the videotape shows that Boyce was not

16

Moreover, it seems to us that the decision to detain Boyce and to call the drug dog unit was based on Boyce's refusal to consent to a search of his vehicle. Edwards testified that Boyce was suspicious because he was nervous and because he had unusual travel plans. But what is troubling to us is that all of these factors were present before Edwards decided to issue a warning citation and yet, Edwards, at that point, was still willing to let Boyce go with nothing but a warning. The only significant event between the time that Edwards wrote the warning citation to the time Boyce called the drug dog unit was Boyce asserting his constitutional right not to let Edwards search his car.[7] This suggests that the true reason Edwards chose to detain Boyce was because Boyce would not consent to a search of his car. Williams, 271 F.3d at 1271 (10th Cir. 2001) (noting that, when the only

---

extremely nervous. Second, in Harris, the circumstances were suspicious because the defendant had a restricted license indicating that he may not have been authorized to drive the car at the time he was stopped. Id. at 1114-15. Conversely, Boyce was authorized to drive his rental car. Finally, in Harris, the defendant originally said he started driving in Florida and then changed his story to say he started from Georgia. Id. at 1114. This can raise a reasonable suspicion because it suggests that the defendant is trying to hide that he was coming from Florida, a known drug-source state. In this case, Boyce was always forthcoming and consistent about his travel plans. The only inconsistency was not in Boyce's statements but in his plan to return the rental car late, which he readily acknowledged. Nothing in this inconsistency indicated that Boyce was any different from the large number of innocent travelers who extend their trips beyond the time originally provided for in their rental agreements.

[7] Although Edwards testified that Boyce had become more suspicious in this time because his nervousness did not subside after Edwards told him he would receive a warning instead of a ticket, we note, as discussed earlier, that the tape shows that Edwards did not have time to observe any continued nervousness before he called the drug dog unit.

siginificant even between the time the police said the defendant was free to go and the arrival of the drug unit was the refusal to consent to a search, the circumstances "suggest[] ostensibly that the officer based his detention of [defendant] solely on his refusal to consent to the officer's request to search the vehicle."). In addition, the tape shows that Edwards immediately called in the drug dog unit after Boyce refused to allow a search. The immediacy of Edwards's response also indicates to us that the refusal to consent was the deciding factor for Edwards to continue Boyce's detention. The police cannot base their decision to prolong a traffic stop on the detainee's refusal to consent to a search. Such a refusal may only be considered when the police have already observed, before asking for permission to search, facts sufficient to raise a reasonable suspicion. Id. (holding that the officer could choose to detain defendent after he refused to consent to a search of his car "if the officer already had sufficient reasonable suspicion to detain [the defendant] for the purpose of the canine drug search"). In this case, as already discussed, Edwards had not observed facts sufficient to raise a reasonable suspicion when he asked for consent. Therefore, Edwards could not consider Boyce's refusal to consent in making his decision to detain Boyce. Because the tape shows that Edwards did unlawfully base his decision on Boyce's refusal to consent, the detention and search were unconstitutional.

18

B. Scope of the Traffic Stop

Boyce also argues that Edwards exceeded the permissible scope of an investigatory stop when he began to ask Boyce whether he was carrying any contraband. In Purcell, we recognized that there are two possible tests for when a police investigation exceeds the scope of a routine traffic stop. 236 F.3d at 1279-80. The first test comes from the Tenth Circuit and limits the questions a police officer may ask to those questions that are justified by reasonable suspicion of criminal activity or reasonable safety concerns.[8] Id. at 1279. The second test comes from the Fifth Circuit and holds that questions unrelated to the reason for the initial stop are only unlawful if they extend the duration of the initial seizure. Id. at 1279-80. In this case, we have already held that Edwards's questions about contraband extended the duration of the initial seizure and that Edwards did not have a reasonable suspicion of criminal activity. In addition, Edwards never testified that it was concern for his safety that prompted him to expand the scope of his questioning. Therefore, as in Purcell, we need not determine which test is controlling in this circuit because under either test, Edwards's investigation exceeded the permissible scope of an investigatory stop.

---

[8] Whether this is still the test in the Tenth Circuit is unclear. In United States v. Holt, 264 F.3d 1215, 1226 (10th Cir. 2001), the court declined to decide if they should apply the Fifth Circuit's test to questions regarding the scope of questioning during a traffic stop.

19

## III. CONCLUSION

While we recognize that drug trafficking is a serious problem in this country and we encourage law enforcment agencies to use every available means to control it, we cannot condone methods that offend the protections afforded by the Constitution. The detention of Jody Boyce extended beyond the time necessary to process the traffic violation for which he was stopped and Officer Edwards did not have the reasonable suspicion to justify such a detention. Accordingly, the detention and search were unreasonable under the Fourth Amendment. The order of the district court denying Boyce's motion to suppress is REVERSED, the judgments of conviction VACATED, and the case REMANDED to the district court for further proceedings consistent with this opinion.

PROPST, District Judge, concurring dubitante.