[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 2, 2008
THOMAS K. KAHN
CLERK

No. 07-12835
Non-Argument Calendar

_____

D. C. Docket No. 06-00095-CR-BAE-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN LAVOY ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 2, 2008)**

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

This is Kevin Robinson's appeal of his conviction and sentence for

possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

## I.

On February 8, 2006, Robinson was driving on I-95 with Demond Mills in the passenger seat. While traveling through Richmond Hill, Georgia, he passed by Sheriff's Deputy Mark Crowe, who was doing "criminal interdiction" on I-95. Crowe pulled his police cruiser onto the highway and drove up behind Robinson. At that point Robinson drove from the center lane to the right lane and back again. Crowe then initiated a traffic stop.

After Robinson pulled the car over, he got out and went to the rear of the vehicle. Deputy Crowe asked Robinson for his driver's license, which Robinson provided. Crowe then enquired who owned the car and where Robinson was going. Robinson told Crowe that a friend of his, a stripper named "Fluff," had lent him the car to drive "Mouse" (Mills) to Delaware. When Crowe asked for the car's insurance and registration papers, Robinson told him that Mouse had them. Crowe went to the car, asked for Mills' real name, and requested the insurance and registration papers. When Mills complied, Crowe saw that the insurance on the car was valid but made out to "John Greggo." Suspicious, Crowe called in Robinson's driver's license information and asked for his criminal history. Crowe was informed that Robinson had a criminal history for possession of cocaine. Looking

through the car's window, Crowe saw that the film used to tint car windows had been peeled off and was inside the car.

Deputy Crowe informed Robinson that he was going to issue him a warning citation for weaving between lanes. Crow then told Robinson that there were problems with drug, gun, and money trafficking in the area and asked if he could search Robinson's car. Robinson refused. By this time another officer had arrived as back-up, and Crowe asked him to call for a canine unit. This occurred about seven or eight minutes after the initiation of the stop. A drug dog and its handler happened to be nearby and arrived in less than a minute. The handler led the dog around Robinson's car, and it alerted on the rear passenger side door. The handler searched the car and found a package with cocaine in it. There is a factual dispute about whether Crow was still writing out the warning citation when the drug dog arrived or had finished a few minutes before then.

After being indicted on one count of possession with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), Robinson moved to suppress the cocaine on the grounds that it was obtained as a result of an unconstitutional search and seizure. A magistrate judge conducted an evidentiary hearing on the suppression motion. Robinson argued that Deputy Crowe detained him longer than necessary to issue the citation so that the drug dog could arrive and

3

that this constituted an unreasonable seizure. The government called Crowe, who testified that the drug dog arrived and had alerted to the cocaine before he had finished issuing the warning citation. The government also called the dog handler, who testified that Crowe and Robinson were "still interacting" when he arrived and that the dog alerted within a minute of his arrival at the scene.

Robinson then testified on his own behalf. On direct examination, he stated that his interaction with Deputy Crowe—receiving and signing a written warning, talking about trafficking on I-95, and refusing consent to search the car—was over about three minutes before the drug dog arrived. During cross-examination, the government asked Robinson whether he had made a written statement to the police in which he admitted knowing that the cocaine was in the car. Robinson denied doing so, and his attorney objected on the grounds that the defense had not been provided with the alleged statements. The court instructed the government to make sure that the defense was provided with the statements.

The magistrate judge then issued a report and recommendation denying Robinson's motion to suppress, stating that "after considering the testimony and assessing the credibility of the witnesses, [he] simply [did] not believe [Robinson's] version of the facts." Robinson objected to the report and recommendation on several grounds, including the reference to his written

4

statements during cross-examination. The district court adopted the report and recommendation in full. Robinson then conditionally pleaded guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), reserving his right to appeal the district court's denial of his motion to suppress the evidence.

At sentencing, the government introduced two judgments of conviction against Robinson from Florida state court. Each judgment indicated that he pleaded nolo contendere on December 2, 1999, and each sentenced Robinson to thirty-six months imprisonment. The first judgment adjudicated Robinson guilty of unlawful possession with intent to sell or deliver a controlled substance, in violation of Fla. Stat. § 893.13(1)(a)(1), and of three other crimes. The information attached to this judgment stated that all of these crimes occurred on July 23, 1999. The second judgment adjudicated Robinson guilty of two counts of unlawful sale or delivery of a controlled substance, also in violation of Fla. Stat. § 893.13(1)(a)(1). The information attached to it stated that these crimes occurred on August 2, 1999.

Based on these two documents, the district court found that Robinson had two prior felony convictions for controlled substance offenses. On that basis it treated him as a career offender with a base offense level of thirty-two under United States Sentencing Guidelines § 4B1.1(b)(C) (Nov. 2006). The court then

5

gave Robinson a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. With an adjusted offense level of twenty-nine and a criminal history category of VI, Robinson's advisory guideline range was 151 to 188 months imprisonment. Taking the guideline range and the 18 U.S.C. § 3553(a) factors into account, the district court sentenced Robinson to 156 months imprisonment, four years of supervised release, and a special assessment of one hundred dollars.

Robinson now appeals, contending that the district court erred by: (1) denying his motion to suppress the cocaine; and (2) sentencing him as a career offender.

## II.

Robinson makes three arguments for why the district court erred by denying his motion to suppress the cocaine: (1) the government's failure to turn over Robinson's statements in discovery tainted the magistrate judge's credibility determination at the suppression hearing; (2) Deputy Crowe lacked reasonable suspicion to initiate the traffic stop; and (3) Crowe illegally detained Robinson after issuing the warning citation to allow time for the drug dog to arrive.

Federal Rule of Criminal Procedure 12(b)(4) governs discovery for pretrial hearings, including suppression hearings. Fed. R. Crim. P. 12(b)(3)(C). Rule

12(b)(4)(B) provides that, upon the defendant's request, the government must turn over any evidence that it would have to give to the defense under Federal Rule of Criminal Procedure 16. Rule 16(b) in turn requires the government, upon request, to turn over any written statements by the defendant that are in the government's possession.

Robinson argues that by failing to turn over his statement, the government was able to surprise him with it and impeach his credibility during the suppression hearing. Had the magistrate judge believed Robinson's testimony, he would have found a Fourth Amendment violation and suppressed the cocaine.

We review the alleged discovery violation for abuse of discretion. Cf. United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989) (addressing a discovery violation under Fed. R. Crim. P. 16). A district court abuses its discretion in deciding what remedy, if any, to provide for a Rule 12 discovery violation only when the defendant shows that the violation "prejudiced his substantial rights." United States v. Rodriguez, 765 F.2d 1546, 1557 (11th Cir. 1985). Although it is unclear whether there was a Rule 12 discovery violation, we need not decide this issue because, even if there was a violation, it did not prejudice Robinson's substantial rights. As we conclude below, Robinson's version of events, even if believed, does not establish a Fourth Amendment

violation. Therefore, the magistrate's credibility determination did not affect the outcome of the suppression hearing. Given that any error was irrelevant to the outcome, it could not have prejudiced Robinson's substantial rights and so could not have been reversible error.

Robinson next argues that Deputy Crowe violated his Fourth Amendment rights by pulling him over without probable cause to believe that Robinson had committed a crime. The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, including "brief investigatory stops of persons or vehicles." United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002). We review de novo the district court's legal conclusions and its factual findings only for clear error. United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999).

When an officer has probable cause to believe that a traffic violation has occurred the decision to stop a vehicle will not violate the Fourth Amendment, regardless of the officer's subjective intent or motivation. See United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999). Robinson does not dispute that Deputy Crowe saw him move from the center lane of I-95 to the right lane and back again. Georgia law states: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver

8

has first ascertained that such movement can be made with safety." Ga. Code Ann. § 40-6-48(1). Robinson's weaving between lanes gave Crowe probable cause to believe that this section of the Georgia traffic laws was being violated, and therefore the traffic stop was not unreasonable.

Finally, Robinson argues that Deputy Crowe violated his Fourth Amendment rights by detaining him longer than necessary to issue the traffic citation. Although we normally "construe all facts in the light most favorable to the prevailing party in the district court," United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003), we will accept the version of events that Robinson recounted at the suppression hearing—that Crowe detained him for three minutes while waiting for the drug dog to arrive—because it does not establish a violation of the Fourth Amendment.

There are limited circumstances in which a law enforcement official may prolong a traffic stop. One of these is when he has "articulable suspicion of other illegal activity." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). We consider whether there is sufficient evidence to give rise to an "articulable suspicion" under a totality of the circumstances test. See Boyce, 351 F.3d at 1107. Here, given the totality of the circumstances, Deputy Crowe had grounds for an articulable suspicion of other illegal activity. First, Robinson appeared to be

9

attempting to avoid police scrutiny by changing lanes away from Crowe before the stop. Second, Robinson's story that he borrowed the car from a female stripper named "Fluff" was contradicted by the car's registration, which was made out to a man named "John Greggo." Third, Robinson claimed that he was giving Mills a ride all the way from Florida to Delaware, but he did not know Mills' real name. Fourth, Robinson had a criminal conviction for possession of cocaine, and I-95 is a known drug corridor. Fifth, tinted car windows may draw the attention of law enforcement, so evidence that someone has recently removed window tinting—such as the peeled-off tinting film that Crowe saw in the car Robinson was driving—suggests that the car's occupants were trying to avoid that attention. All of this together goes beyond "an inchoate hunch," and amounts to reasonable suspicion. Id. (internal quotation marks omitted). Further, prolonging the detention for three minutes under these circumstances is de minimis and does not violate the Fourth Amendment. See Purcell, 236 F.3d at 1279 (holding that a three minute detention during a traffic stop was de minimis under circumstances similar to those here).

## III.

Robinson's second contention is that the district court erred by sentencing him as a career offender under U.S.S.G. § 4B1.1(b)(C). To sentence a defendant as

10

a career offender, the district court must find by a preponderance of the evidence that:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Robinson challenges the third element, arguing that the uncertified judgments upon which the district court relied in making its finding were inaccurate. He maintains that he entered a plea of guilty to the reduced charge of possession of cocaine on each count, but he does not dispute the thirty-six month sentence. For purposes of determining criminal history under the Sentencing Guidelines, a "felony offense" is defined as "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed." U.S.S.G. § 4A1.2(o). Because Robinson's sentence was more than one year for each of his drug convictions, the offenses must have been punishable by more than one year. Therefore, they were felonies under the guidelines, and, even if Robinson did plead to possession of cocaine instead of the crimes listed in the uncertified judgments of conviction, he still would qualify as a career

11

offender.  The district court did not err in calculating Robinson's advisory guideline range.

In the alternative, Robinson moves to supplement the record on appeal with the certified copies of the judgments of conviction even though he does not yet have those documents.  We do not usually consider evidence that was not before the district court.  See Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 n.4 (11th Cir. 2003).  In any event, Robinson's advisory guideline range would be unaffected by what he contends that the certified copies of the judgments show.

**AFFIRMED.**