[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15840
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00099-CR-J-25-HRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENEK ANTOINE SAMPSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 26, 2010)

Before TJOFLAT, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Denek Antoine Sampson appeals his convictions for distribution of cocaine

base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).  After review of the record and the parties' briefs, we AFFIRM.

## I. BACKGROUND

At 9:00 p.m. on 26 December 2006, patrol officer G.B. Futch with the Jacksonville Sheriff's Office observed a red pickup truck proceed through a red light at the intersection of Blanding and Wilson Boulevards.  R2 at 12-15.  Futch activated his siren, and the vehicle eventually stopped in the right lane, blocking traffic.  *Id.* at 15, 33, 68.  Using his loud speaker, Futch told the driver of the vehicle to pull into the parking lot of a nearby business.  *Id.* at 15-17.  The driver, whom Futch identified as Sampson, admitted running the red light, told Futch that he was in a hurry, and asked Futch to "speed things up," which Futch thought was unusual.  *Id.* at 17-18.  According to Futch, Sampson appeared nervous, was visibly shaking, and kept looking around.  *Id.* at 18.  Futch obtained Sampson's driver's license and vehicle registration and returned to his patrol car, where he conducted two computer background checks.  *Id.* at 18-19.  These checks, which took approximately five minutes to run, revealed that Sampson had recently been

2

incarcerated on weapons and drug offenses. *Id.* at 20, 73.

Futch further testified that during the initial part of the traffic stop, he had to stop what he was doing and speak to the parking lot's owner, who had approached Futch and asked what was going on. *Id.* at 21. Futch was also interrupted when Sampson's fiancée arrived at the scene and, immediately after exiting her vehicle, began demanding that Futch speak to the attorney whom she had called on her cell phone. *Id.* at 21-22. When Sampson's fiancée, who was "very agitated, very loud, very demanding," started to approach Sampson, Futch exited his vehicle, ordered her several times to step away from Sampson's truck, and returned to his patrol car. *Id.* at 22-23. Once Sampson's fiancée complied with Futch's orders, he was able to continue with the traffic stop. *Id.* at 24. At that point, he still had not written the citation. *Id.*

Futch's partner, Officer Smith, then asked Sampson for consent to search his truck, which Sampson refused. *Id.* at 25. At approximately 9:06 p.m., Futch called for a K-9 unit, believing, based on Sampson's nervousness and criminal history, the demeanor and actions of his fiancée, and the fact that Sampson was in a hurry, that Sampson may have had drugs or weapons in his vehicle. *Id.* at 22-23, 25-26, 40-41, 48, 56. While waiting for the K-9 unit to arrive, Futch kept working on the citation and performed two additional computer checks, which confirmed

3

that Sampson had prior convictions and arrests for offenses involving firearms and narcotics. *Id.* at 24, 27, 72-73. When the K-9 unit arrived at 9:15 or 9:20 p.m., Futch was still in his vehicle and the traffic stop was still underway. *Id.* at 27-28, 41-44, 108-10. Futch remained in his vehicle while the K-9 unit searched around Sampson's truck. *Id.* at 44. When the drug dog "hit on [Sampson's] car," Futch exited his patrol vehicle and searched Sampson's vehicle, where he uncovered the contraband. *Id.* at 45.

In his suppression motion, Sampson argued that his detention was unlawful because it began after all actions necessary to write the traffic citation had been taken and all computer background checks had been performed, and that the police officers' justifications for the continued detention fell short of reasonable suspicion. R1-10. The government responded that Futch was still writing the traffic citation when the drug dog arrived, just fifteen minutes into the stop. R1-25 at 4. Because Sampson was not detained any longer than necessary to complete the traffic stop, the government argued, the detention and subsequent search of the vehicle were legal. *Id.* at 4-5. The government contended alternatively that even if the traffic stop was over when the K-9 unit arrived at the scene, the officers had reasonable suspicion that Sampson was engaged in criminal activity to justify the continued detention. *Id.* at 5-7.

4

The district court found that the computer checks, which took five minutes to complete, did not unreasonably prolong the traffic stop, and that the officers were justified in asking Sampson for consent to search the vehicle due to the results of those computer checks. R1-49 at 5. The district court also found that Futch had not yet completed writing the traffic citation when he asked for consent to search the vehicle and called for the K-9 unit. *Id.* at 6. Moreover, a fifteen to twenty minute total stop was not unreasonable because the officers acted diligently in performing all computer checks and in calling the K-9 unit within the first five minutes of the stop. *Id.* at 7. The district court also noted that interruptions by the business owner and Sampson's fiancée likely affected Futch's speed in writing the citation. *Id.* at 7 n.5. The district court concluded that "because the traffic stop was not unreasonably prolonged, [Sampson] was not illegally detained[,] and the search of [Sampson's] vehicle was not the result of an unlawful detention," the motion to suppress was due to be denied. *Id.* at 8. Following a bench trial, the district court found Sampson guilty as to all three counts in the indictment. *See* R1-51; *see also* R1-66 at 1.

## II. DISCUSSION

When reviewing the district court's ruling on a motion to suppress, we review the court's findings of fact for clear error and its application of the law to

5

those facts *de novo*. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003) (citation omitted). In conducting our review, we construe the facts in the light most favorable to the prevailing party below. *Id.*

Because traffic stops are seizures within the meaning of the Fourth Amendment, "an officer's actions during a traffic stop must be reasonably related in *scop*e to the circumstances which justified the interference in the first place" and "the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001) (quotation marks and citations omitted). A law enforcement officer conducting a traffic stop may prolong a traffic stop "to investigate the driver's license and the vehicle registration . . . by requesting a computer check" and to await "the results of a criminal history check that is part of the officer's routine traffic investigation." *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quotation marks, citations, and footnote omitted); *see also United States v. Hernandez*, 418 F.3d 1206, 1209 n.3 (11th Cir. 2005) (stating that the officer may ask questions – even those unrelated to the initial purpose of the stop – so long as the questioning "does not prolong the time reasonably required to complete that initial mission") (quotation marks, alterations, and citation omitted). "Ordinarily, when a citation or warning has been issued and all record checks

6

have been completed and come back clean, the legitimate investigative purpose of the traffic stop is fulfilled." *United States v. Simms*, 385 F.3d 1347, 1353 (11th Cir. 2004); *see also Boyce*, 351 F.3d at 1107 (stating that once officer "had completed writing the warning citation and returned Boyce's license . . . the traffic violation investigation was complete and . . . Boyce was free to go"). Where, however, an officer has "an objectively reasonable and articulable suspicion that illegal activity ha[s] occurred or [i]s occurring," he may extend the duration of the stop for further investigation. *United States v. Spoerke*, 568 F.3d 1236, 1248-49 (11th Cir. 2009). "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Simms*, 385 F.3d at 1354 (quotation marks and citation omitted). Reasonable suspicion to justify an extended investigatory detention thus requires more than "an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (quotation marks and citation omitted).

We agree with the district court that Sampson was not unconstitutionally detained pending the arrival of the drug dog. As the evidence reflects, Futch ran an initial check of Sampson's license, asked for consent to search Sampson's vehicle, and requested a K-9 unit all within the first six minutes of pulling

Sampson over. At this time, Futch had not given Sampson the traffic citation nor had he completed writing the citation. When the K-9 arrived at the scene ten or fifteen minutes later, Futch was still in his patrol car writing the traffic citation. Because the purposes of the traffic stop had not been fulfilled when Officer Futch requested the K-9 unit, that request was part of the initial traffic stop. *Cf. Boyce*, 351 F.3d at 1107 (where officer conducting traffic stop did not request criminal history check "until several minutes after he had written the warning[,] . . . the criminal history check could not be part of the original traffic stop investigation and could not be the basis for prolonging Boyce's detention"). Further, considering the totality of the circumstances, including the interruptions by Sampson's fiancée and the parking lot's owner, we cannot conclude that a fifteen to twenty minute total detention was unreasonable. *See Purcell*, 236 F.3d at 1279 (holding that fourteen-minute detention was not unreasonable and citing cases upholding traffic stops of thirty and fifty minutes in length).

### III. CONCLUSION

Sampson appeals his convictions on the grounds that the district court should have granted his motion to suppress evidence seized from his vehicle during a traffic stop. For the foregoing reasons, we AFFIRM.

**AFFIRMED.**

8