[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12745
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 27, 2012
JOHN LEY
CLERK

Docket No. 3:10-cr-00156-MMH-TEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL MATTHEW SCHMITZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 27, 2012)

Before EDMONDSON, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Paul Matthew Schmitz appeals his conviction for possession of a firearm by

a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e), for which he was

sentenced to 24 months' imprisonment. No reversible error has been shown; we affirm.

On appeal, Schmitz challenges the district court's denial of his motion to suppress the gun and ammunition discovered during a search of his home. In particular, Schmitz argues that the district court clearly erred in concluding that his wife's consent to search their home was voluntary. In considering the district court's denial of a motion to suppress, we review fact determinations for clear error and application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003). And we construe all facts in the light most favorable to the prevailing party below -- here, the government. Id.

Police officers may conduct a warrantless search of a home if they first obtain voluntary consent of a person "possessing 'common authority' over the premises." Bates v. Harvey, 518 F.3d 1233, 1244 (11th Cir. 2008). Whether consent to a search is voluntary is a question of fact to be determined based on the totality of the circumstances; and the government bears the burden of proving both (1) that consent existed and (2) that the consent was voluntary and not an acquiescence to a claim of lawful authority. United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).

The record reveals that Deputy Robert Sands responded to a 911 call from Schmitz's neighbor accusing Schmitz of assaulting the neighbor with a gun. When Deputy Sands ran Schmitz's name through a computer database, he discovered that Schmitz also had an outstanding arrest warrant for violating his probation in connection with a previous conviction for being a felon in possession of a firearm. Deputy Sands then knocked on the front and back doors of Schmitz's home and -- when no one answered -- had dispatch contact Schmitz's wife to determine Schmitz's whereabouts and to ask her to come home.[1] When Mrs. Schmitz arrived home, she gave Deputy Sands permission to search the house. After discovering ammunition, a gun holster, and marijuana seeds in the home, Deputy Sands contacted the drug task force to continue the investigation. He also provided information for a search warrant affidavit to conduct a more thorough search of the house and to search a locked bunker in the back yard. While executing the search warrant, officers found the gun at issue.

That Mrs. Schmitz consented to a search of her home after arriving at the scene -- including signing a permission-to-search form -- is undisputed. At the suppression hearing, however, the magistrate judge heard conflicting testimony

---

[1]Sometime after contacting Mrs. Schmitz -- but before she arrived home -- Deputy Sands discovered Schmitz hiding at a neighbor's house and arrested him.

about whether her consent was indeed voluntary. According to Deputy Sands, only two marked patrol cars were parked on the street when Mrs. Schmitz arrived home and Deputy Sands was the only officer involved in obtaining her consent. Deputy Sands treated Mrs. Schmitz politely, never raised his voice, kept his weapons holstered, allowed her to use her phone to call family and friends, and never threatened to arrest her. Although Mrs. Schmitz was crying and upset when she first arrived home, she calmed down and stopped crying before consenting to the search. Deputy Sands also testified unequivocally that he read the entire consent form to Mrs. Schmitz, including informing her that she had a right to refuse a search.

Mrs. Schmitz, on the other hand, testified that 9 or 10 police cars were parked in front of her home when she arrived. She stated that two uniformed officers -- Deputy Sands and Officer Bunton[2] -- spoke with her about consenting to a search and that she believed that she had no choice but to consent because Deputy Sands promised not to arrest her if she cooperated. She contended that she was terrified, crying hysterically, and shaking so much when she signed the

---

[2]Officer Ryan Bunton, a member of the drug task force, testified that he was wearing plain clothes on the day of the search and that he was not present when Mrs. Schmitz consented to the search or during the initial search of the home. In fact, Officer Bunton did not speak with Mrs. Schmitz until after the task force had obtained and executed the search warrant.

consent form that she had to steady her right hand with her left just to sign her name. On direct examination, Mrs. Schmitz testified that the officers never read her the consent form, but later -- in response to the magistrate judge's inquiry -- stated that she was not sure whether they read her the form or not.

After considering the testimony of the witnesses, the magistrate judge credited Deputy Sands's version of the events over Mrs. Schmitz's testimony and, thus, concluded that Mrs. Schmitz's consent was voluntarily obtained. In particular, the magistrate decided not to credit Mrs. Schmitz's testimony because she could not recall the events at issue with precision, her testimony wavered, her testimony was "not completely forthright," and she had a personal interest in the outcome of the case.

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). Where the testimony of two witnesses is in "direct conflict," the district court's credibility determination "is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." Id. Thus, "we must accept the evidence

unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." Id.

In this case, Deputy Sands's testimony conflicted directly with Mrs. Schmitz's testimony. Because we are unconvinced that Deputy Sands's version of the events was "exceedingly improbable" or "contrary to the laws of nature," the district court's credibility determination is entitled to our deference. See id.

We also reject Schmitz's argument that Deputy Sands's testimony was inherently unreliable because he either knowingly allowed false information to be included in a search warrant affidavit, or acted with reckless disregard for the truth when he told the officer preparing the affidavit that Schmitz threatened his neighbor with a gun. First, the search warrant affidavit reflected accurately that the neighbor's story was just an accusation and did not indicate that evidence existed yet to corroborate that accusation.

Second, we are unpersuaded that Deputy Sands should have realized that the neighbor was allegedly lying after seeing the large opaque tarp that would have blocked the neighbor's view of Schmitz. As the magistrate judge noted, although Deputy Sands noticed the tarp in Schmitz's back yard as he approached Schmitz's back door, he was focused on searching for a man who "(1) was a convicted felon; (2) had an outstanding felony warrant for his arrest . . . ; (3) may have just

6

threatened to kill his neighbor with a handgun; and (4) was not answering his door or otherwise presenting himself to law enforcement." We agree that Deputy Sands's approach was reasonable and we will not second-guess decisions he made in the field. See United States v. Sharpe, 105 S.Ct. 1568, 1575-76 (1985).

Considering the totality of the circumstances and construing the evidence in the light most favorable to the government, the district court did not clearly err in concluding that Mrs. Schmitz's consent was voluntary.[3]

AFFIRMED.

---

[3]Because we conclude that Mrs. Schmitz's consent was obtained voluntarily, we need not address Schmitz's argument that -- absent the information gathered as a result of Mrs. Schmitz's coerced consent -- the search warrant affidavit failed to establish probable cause.