[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10274

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FLOYD HINTTEON GREEN, JR.,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00070-TPB-NHA-1

————————————————

Before JILL PRYOR, BRASHER, and WILSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Floyd Green, Jr. appeals his conviction for possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).  On appeal, he argues the district court erred in denying his motion to suppress evidence obtained in the search of his vehicle because law enforcement impermissibly prolonged the traffic stop that led to his arrest.  After careful review, we affirm.

## I.

"A district court's denial of a motion to suppress involves mixed questions of law and fact."  *United States v. Braddy*, 11 F.4th 1298, 1307 (11th Cir. 2021).  "We review the district court's findings of fact for clear error and the district court's application of the law to those facts *de novo*."  *Id*.  Factual findings are construed in the light most favorable to the prevailing party.  *Id*.  We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation mark omitted).  We may affirm for any reason supported by the record,

even if not relied upon by the district court. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012).

## II.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Under the exclusionary rule, evidence cannot be used against a defendant in a criminal trial where that evidence was obtained via an encounter with law enforcement officers that violated the Fourth Amendment. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). A traffic stop is a seizure within the meaning of the Fourth Amendment, "even if only for a brief period and for a limited purpose." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). An officer only needs reasonable suspicion to justify an automobile stop that is based on a traffic violation. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014).

Police officers do not have unfettered authority to detain a person indefinitely at a lawful traffic stop. *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022) (en banc). The detention must be limited in scope and duration, and officers must conduct any investigation diligently. *Id.* A traffic stop's scope "must be carefully tailored to its underlying justification." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quotation marks omitted). The seizure's mission determines what is a tolerable duration. *Id.* A stop is unlawful when it lasts longer than is necessary to complete its mission. *Id.* The mission is typically "to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citation omitted).

When an officer has already lawfully detained a driver, an additional intrusion into the driver's personal liberty is justified if it is outweighed by legitimate concerns for the officer's safety. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Officer safety is a "legitimate and weighty" justification, and traffic stops are not necessarily any less dangerous than other types of confrontations. *Id.* at 110. Even when there is nothing unusual or suspicious about a driver's behavior and the officer does not suspect foul play, an additional intrusion may be justified. *See id.* at 111. When officers engage in unrelated criminal on-scene investigation, however, these officer safety interests and the state's interest in detecting crime differ in kind. *Rodriguez*, 575 U.S. at 356–57.

## III.

As an initial matter, we agree with Green that the district court here erred in finding that because the officer had not yet completed a records check or written a citation when he asked about the weapons and narcotics, there was no prolongation of the traffic stop. *See Campbell*, 26 F.4th at 866. But the district court also found that the questions were permissible as related to officer safety. *See Mimms*, 434 U.S. at 110–11. Green argues that the district court erred in allowing the stop to be prolonged to ask questions related to officer safety, but we disagree. Green points to the Supreme Court's decision in *Rodriguez*, and our decisions in *Campbell* and *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003), to support his argument, but the facts at issue here differ from the facts in those cases.

In *Rodriguez*, an officer pulled over a driver and his passenger shortly after midnight for a traffic violation. 575 U.S. at 351. The officer asked the men where they were coming from and where they were going; ran records checks on both men; and wrote a warning ticket for the traffic violation, which he gave to the driver with a verbal explanation. *Id*. at 351–52. At this point, the justification for the stop ceased, but the officer asked for permission to walk his dog around the vehicle. *Id*. at 352. The driver declined, and then the officer had the men turn off the car, exit the vehicle, and stand by the patrol car. *Id*. The officer took the dog twice around the vehicle, and the dog alerted to the presence of drugs. *Id*. A large bag of methamphetamine was recovered from the vehicle after a search was conducted. *Id*.

Seven to eight minutes had passed from the issuance of the warning ticket to the indication by the dog. *Id*. The Supreme Court acknowledged that, while traffic stops are dangerous for officers and officers may take precautions to complete a stop safely, safety precautions taken to facilitate unrelated criminal investigations are not permissible. *Id*. at 356–57. In addition, the Court rejected the government's argument that an officer could earn "bonus" time to pursue an unrelated criminal investigation so long as the officer was reasonably diligent, and the stop was of an overall reasonable duration. *Id*. at 357. We summarized the takeaway from *Rodriguez* in *Campbell* as follows:

> The proper standard for addressing an unlawfully prolonged stop, then, is this: a stop is unlawfully prolonged when an officer, without reasonable suspicion,

diverts from the stop's purpose and adds time to the stop in order to investigate other crimes. In other words, to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion.

*Campbell*, 26 F.4th at 884 (citations omitted).

The traffic stop here is different from the one in *Rodriguez* because the stop and its purpose had not ceased when Officer Ragusa asked the questions at issue. *See* 575 U.S. at 352. Given the legitimate and weighty justification of protecting officer safety, Green's argument that related safety concerns must be limited to solely ensuring vehicles are operated safely and responsibly is unavailing. *Mimms*, 434 U.S. at 110. While Green's argument that the officer could have alternatively performed a pat down or ordered Green out of the truck for the window tint investigation may have some merit, the district court's explicit finding that questions about weapons and one reference to illegal narcotics are related to officer safety should not be disturbed by this court. *See Ramirez-Chilel*, 289 F.3d at 749. It is immaterial whether Officer Ragusa was reasonably diligent in completing his related tasks and inquiries as there can be no "bonus" awarded for unrelated inquiry. *See Rodriguez*, 575 U.S. at 357.

In *Campbell*, an officer pulled over a driver for crossing the fog line on the highway twice in short succession and having a rapidly blinking turn signal. 26 F.4th at 865. The officer determined that the turn signal was malfunctioning, so he decided to issue a

warning and asked the driver to get out of the vehicle and follow him to the patrol car. *Id.* at 866. While working to issue the written warning, the officer and driver engaged in conversation at which point the officer asked the driver several questions, and the driver responded telling the officer his occupation, where he was traveling, that he had a previous DUI, and was not traveling with a firearm. *Id.* The officer then asked:

> [Do you have] any counterfeit merchandise that you are taking to your relatives over there in Augusta? And what I mean by that is—any purses? Shoes? Shirts? Any counterfeit or bootleg CDs or DVDs or anything like that? Any illegal alcohol? Any marijuana? Any cocaine? Methamphetamine? Any heroin? Any ecstasy? Nothing like that? You don't have any dead bodies in your car?

*Id.* at 866, 885 (alteration in original).

This set of questions, to which the driver responded no to each, took approximately 25 seconds in total. *Id.* at 866. We held that the set of questions related to contraband unlawfully prolonged the stop because they were unrelated to the traffic stop, but aimed at general crime and drug trafficking, and they added approximately 25 seconds to the stop. *Id.* at 885. However, *Campbell* did not create a total prohibition on asking about contraband. *See id.* at 885. The officer asked about a range of items, only some of which were illegal narcotics. *Id.* In asking about counterfeit clothing, shoes, etc., it was apparent that the officer was engaged in a parallel criminal investigation to the traffic stop. *See id.*

As in *Campbell* where the 25 seconds of questions that were found impermissible occurred while the officer was working to issue the driver a written warning, *see id.* at 866, here, Officer Ragusa was about to return to his patrol car to complete checking the database records when he asked about weapons, narcotics, and searched Green's truck. The district court found that the additional questioning took approximately eight seconds. However, Officer Ragusa was not engaged in a "fishing expedition" like we found improper in *Campbell,* but kept his questions limited to items that may be reasonably understood to be related to officer safety, primarily focusing on weapons, with minimal questioning on drugs.

Finally, in *Boyce*, we held that an officer asking a motorist during a stop about carrying contraband exceeded the permissible scope of the traffic stop. *See* 351 F.3d at 1111. Green argues, based on *Boyce*, that officers may not ask about the presence of drugs and weapons at a routine traffic stop without reasonable suspicion. However, in *Boyce*, we did not consider whether the questions about contraband were permissible as related to reasonable officer safety concerns because the officer "never testified that it was concern for his safety that prompted him to expand the scope of his questioning." *Id.* Here, on the other hand, the district court made its finding about officer safety central to its denial of the motion to suppress.

24-10274              Opinion of the Court                    9

## IV.

In this case, the questions about contraband did not unlawfully prolong the traffic stop as they were reasonably related to officer safety.  Accordingly, we affirm.

**AFFIRMED.**